**FILED**

UNITED STATES COURT OF APPEALS

APR 18 2023

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| ALEJANDRO TOLEDO MANRIQUE, | No. 22-15705 |
| Petitioner-Appellant, | D.C. No. 3:21-cv-08395-LB |
| v. | Northern District of California, San Francisco |
| MARK KOLC, Acting United States Marshal for the Northern District of California, | ORDER |
| Respondent-Appellee. | |

Before:  FRIEDLAND and R. NELSON, Circuit Judges, and CARDONE,[*] District Judge.

The published order filed on April 5, 2023 is amended as follows: On slip opinion page 14, lines 5–11, replace <Toledo, moreover, admitted that $21 million in bribe money was transferred into accounts under his former chief-of-security's control, $17.5 million ended up in his mother-in-law's company, and $500,000 was deposited in a bank account in his name or used to purchase real estate titled to him.> with <Toledo, moreover, admitted that $17.5 million in bribe money ended up in his mother-in-law's company, and $500,000 was deposited in a bank account in his

---

[*] The Honorable Kathleen Cardone, United States District Judge for the Western District of Texas, sitting by designation.

name or used to purchase real estate titled to him.>

With these amendments, the panel unanimously votes to deny the petition for panel rehearing.

Judges Friedland and R. Nelson vote to deny the petition for rehearing en banc, and Judge Cardone so recommends. The full court has been advised of the petition for rehearing en banc, and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35.

The petitions for panel rehearing and rehearing en banc (Dkt. No. 55) are **DENIED.**

FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| ALEJANDRO TOLEDO MANRIQUE, | No.   22-15705 |
| Petitioner-Appellant, | D.C. No. 3:21-cv-08395-LB |
| v. | Northern District of California, San Francisco |
| MARK KOLC, Acting United States Marshal for the Northern District of California, | AMENDED ORDER |
| Respondent-Appellee. | |

Before:  FRIEDLAND and R. NELSON, Circuit Judges, and CARDONE,* District Judge.

Peru seeks to extradite its former president Alejandro Toledo Manrique to face criminal charges for allegedly accepting millions of dollars in bribes during his presidency.  Manrique moves to stay his extradition pending resolution of this habeas appeal.  Because he has not shown a sufficient likelihood of success on his habeas petition, we deny his stay request.

I

Peruvian prosecutors accused Toledo of money laundering and collusion.

---

*       The Honorable Kathleen Cardone, United States District Judge for the Western District of Texas, sitting by designation.

They made these accusations in two Prosecutor's Decisions, documents that summarize the ongoing investigation, and in an *Acusación Fiscal*, a document produced at the end of an investigation that lays out the crimes allegedly committed and supporting evidence. After receiving approval from the Supreme Court of Justice of Peru, the Peruvian government presented an extradition request to the United States in May 2018 and sent a supplemental request in August 2020.

Following the usual procedures for extradition, a federal prosecutor filed a criminal complaint against Toledo. Toledo was arrested and placed in custody and detained for about eight months before being released on bail. A United States magistrate judge then certified his extradition to the State Department. Once a court certifies extradition, the Secretary of State "ultimately decides whether to surrender the individual to the requesting state." *Santos v. Thomas*, 830 F.3d 987, 993 (9th Cir. 2016) (en banc).

Toledo petitioned in the United States District Court for the Northern District of California for a writ of habeas corpus, "the only available avenue to challenge an extradition order." *Vo v. Benov*, 447 F.3d 1235, 1240 (9th Cir. 2006). The district court denied the petition. Toledo timely appealed. Two weeks before the oral argument in this appeal, the State Department completed its review of Peru's request and decided to approve extradition. The Government intends to proceed with the extradition as soon as legally possible. Accordingly, it has asked the extradition

court to revoke Toledo's bail and remand him into the United States' custody.

Given the possibility of extradition before a resolution of his appeal, Toledo sought a stay before the district court. The district court denied the motion but entered a temporary stay for Toledo to seek a stay pending appeal from our court. He then moved for such a stay before us. Although the briefing on the motion to revoke bail and remand Toledo into custody is complete, the extradition court indicated it will not act until we rule on Toledo's stay motion.

## II

Four factors guide our consideration: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quoting *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987)).

A stay is "an exercise of judicial discretion," which should be issued "dependent upon the circumstances of the particular case." *Id.* at 433 (quoting *Virginian Ry. Co. v. United States*, 272 U.S. 658, 672–73 (1926)). In assessing these factors, we "balance the relative equities." *Leiva-Perez v. Holder*, 640 F.3d 962, 965 (9th Cir. 2011) (per curiam). Toledo, as the movant, "bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken*, 556

3

U.S. at 433–34.  "A stay is not a matter of right, even if irreparable injury might otherwise result."  *Id.* at 433 (quoting *Virginian Ry.*, 272 U.S. at 672).

A

Irreparable injury is obvious: Once extradited, Toledo's appeal will be moot. *Artukovic v. Rison*, 784 F.2d 1354, 1356 (9th Cir. 1986); *see also Subias v. Meese*, 835 F.2d 1288, 1289 (9th Cir. 1987) (habeas jurisdiction does not extend to foreign custodians).  Additionally, Toledo has presented evidence that extradition to Peru could put his life at risk.  Toledo has explained that he could be detained in Peru up to three years pending formal charges and that the conditions in Peruvian prisons are dire.  Given his advanced age and preexisting health conditions, Toledo risks contracting a fatal illness or experiencing other serious health declines.

B

Importantly, however, Toledo has not shown a likelihood of success on the merits.[1]  We have sometimes described the relationship between this factor and irreparable injury as "a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases."  *Humane Soc'y of U.S. v. Gutierrez*, 523 F.3d 990, 991 (9th Cir. 2008).  Even with a high degree of irreparable

---

[1] Because this order arises in the context of a stay motion, we focus on likelihood of success, rather than actual success.  But our analysis is informed by the significant time that we had devoted to the merits when Toledo filed this stay motion one week before argument.

4

injury, the movant must show "serious legal questions" going to the merits. *Lopez v. Heckler*, 713 F.2d 1432, 1435–36 (9th Cir. 1983). These are questions that "cannot be resolved one way or the other at the hearing on the injunction" because they require "more deliberative investigation." *Republic of the Philippines v. Marcos*, 862 F.2d 1355, 1362 (9th Cir. 1988) (en banc) (citation omitted). A serious question is more than "a merely plausible claim," and a court cannot "forgo legal analysis just because it has not identified precedent that places the question beyond debate." *Where Do We Go Berkeley v. Cal. Dep't of Transp.*, 32 F.4th 852, 863 (9th Cir. 2022).

On a habeas petition challenging extradition, we review only "whether the magistrate [judge] had jurisdiction, whether the offense charged is within the treaty and . . . whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty." *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925); *accord Santos*, 830 F.3d at 1001. Toledo argues that he was not "charged with" an extraditable offense because the extradition treaty requires a formal charge; the "charging document" Peru submitted was insufficient; and no probable cause existed.

1

Article I of the United States-Peru Extradition Treaty provides for extradition of "persons whom the authorities in the Requesting State have charged with, found

5

guilty of, or sentenced for, the commission of an extraditable offense." Extradition Treaty (Treaty), U.S.-Peru, art. I., July 26, 2001, S. Treaty Doc. No. 107-6, 2001 WL 1875758, at *6.

As background, a Peruvian criminal proceeding has three phases: (1) preliminary or investigative, (2) intermediate or examining, and (3) trial. First, during the investigative phase, a prosecutor examines the facts and presents allegations to a judge of the Preliminary Investigation Court. When the investigation ends, the prosecutor must decide whether to dismiss the case or to issue an *Acusación Fiscal* and then seek a formal charge. Once a formal charge is sought, the prosecutor cannot further investigate. Second, during the examining phase, a judge of the Preliminary Investigation Court holds a preliminary hearing, during which the accused may object and present exculpatory evidence. At the end of this hearing, if the judge believes a formal charge is warranted, the judge issues an *Orden de Enjuiciamiento*. Finally, if an *Orden de Enjuiciamiento* issues, the parties proceed to a trial presided over by the Criminal Judge or the President of the Collegiate Court.

Peru has issued an *Acusación Fiscal* accusing Toledo of crimes. The parties dispute whether the accusations contained in the *Acusación Fiscal* suffice to "charge[ ]" Toledo "with" an extraditable offense under the Treaty. The United States claims it does. Toledo argues that the Treaty requires an *Orden de Enjuiciamiento* before extradition. We are faced with interpreting the meaning of

6

"charged with" in the Treaty.

"Charged with" is not obviously limited to formal charges in an *Orden de Enjuiciamiento*. As such, it may extend to the *Acusación Fiscal*. Indeed, the ordinary meaning of the verb "charge" is to generally accuse someone of a crime. *See Charge (vb.)*, *Black's Law Dictionary* (11th ed. 2019) (listing as the first definition of the verb form: "[t]o accuse (a person) of an offense"). Nothing in the language of the Treaty unambiguously requires an *Orden de Enjuiciamiento*, as opposed to an *Acusación Fiscal*, to trigger extradition. And looking to the Treaty as a whole suggests an *Acusación Fiscal* satisfies being "charged with" a crime under the Treaty.

Article VI, which lists the documents that must accompany extradition requests, adds helpful context. Subsections (2) through (4) list the documentation that must accompany various types of extradition requests. Subsection (2) lists required documents for "[a]ll requests." Treaty, art. VI(2), 2001 WL 1875758, at *8. Subsection (3) lists additional documents when extraditing "a person who is sought for prosecution." *Id.*, art. VI(3), 2001 WL 1875758, at *8. Subsection (4) lists documents for "[a] request for extradition relating to a person who has been found guilty of, or sentenced for" an extraditable offense. *Id.*, art. VI(4), 2001 WL 1875758, at *8. Interpreting "charged with" to mean "sought for prosecution" aligns the categories of requested documents in Article VI with the categories of

7

extraditable persons in Article I.  Because "sought for prosecution" seems to reach more broadly and encompass charging steps prior to the *Orden de Enjuiciamiento*, "charged with" is best read as not being limited to charges at that stage.

Caselaw interpreting similar treaties reached a similar conclusion.  We have held that "charged with" in the United States-Germany extradition treaty did not require the filing of a public charge despite the German Code of Criminal Procedure defining "a person charged" as "an accused against whom the public charge . . . has been preferred."  *Emami v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 834 F.2d 1444, 1448 (9th Cir. 1987).  There, we cited favorably (*id.* at 1448) *In re Assarsson* (*Assarsson I*), which held that "charged with" in the United States-Sweden extradition treaty was "used in the generic sense only to indicate 'accused.'"  635 F.2d 1237, 1242 (7th Cir. 1980); *see also In re Assarsson*, 687 F.2d 1157, 1160 (8th Cir. 1982); *Sacirbey v. Guccione*, 589 F.3d 52, 63–65 (2d Cir. 2009) (citing favorably *Assarsson I* and *Emami*).

Toledo notes that the United States-Peru Treaty—unlike the treaties in these cases—requires "a copy of the charging document" in addition to an arrest warrant.  *See* Treaty, art. VI(3), 2001 WL 1875758, at *8.  But this distinction makes no difference.  What loomed large in *Emami* and *Assarsson I* was the lack of "formal charges" as a requirement.  *See Emami*, 834 F.2d at 1448; *Assarsson I*, 635 F.2d at 1243.  Here too, the Treaty does not mention formal charges or the *Orden de*

8

*Enjuiciamiento* anywhere. And the requirement of "a copy of the charging document"—which specifies no particular document—does not define the level of formality we should read into "charged with." Nothing in the treaty suggests that an *Acusación Fiscal* does not qualify as a charging document.

Even if "charged with" is ambiguous, the drafting history suggests a broader meaning as well. The Technical Analysis for this Treaty, *see In re Premises Located at 840 140th Ave. NE*, 634 F.3d 557, 569 (9th Cir. 2011) (relying on Technical Analysis to interpret treaty), explains:

> [T]he negotiating delegations intended that "charged" persons include those who are sought for prosecution for an extraditable offense based on an outstanding warrant of arrest, regardless of whether such warrant was issued pursuant to an indictment, complaint, information, affidavit, or other lawful means for initiating an arrest for prosecution under the laws in Peru or the United States.

S. Exec. Rep. No. 107-12, at 4 (2002), https://www.congress.gov/107/crpt/erpt12/CRPT-107erpt12.pdf. This is strong evidence that "charged with" refers generally to any accusation.

Even more, our rules of interpretation militate against reading in a requirement of particular formal charges where the treaty makes no such specification. Treaties are "construed more liberally than private agreements," *E. Airlines, Inc. v. Floyd*, 499 U.S. 530, 535 (1991) (citation omitted), and "should be construed to enlarge the rights of the parties," *Cucuzzella v. Keliikoa*, 638 F.2d 105, 107 n.3 (9th Cir. 1981). The Supreme Court, moreover, has instructed that "the meaning attributed to treaty

9

provisions by the Government agencies charged with their negotiation and enforcement is entitled to great weight." *Sumitomo Shoji Am., Inc. v. Avagliano*, 457 U.S. 176, 184–85 (1982). These rules also favor construing "charged with" to cover the charging documents Peru has provided, as such a construction enlarges the rights of the signatories and respects the interpretations given by our Executive Branch and the Peruvian government.

Given that the Treaty's language, particularly when considered along with these interpretive tools, suggest that "charged with" does not require formal charges, Toledo has not shown a likelihood of success on this argument.

2

Next, Toledo argues that Peru did not submit a "copy of the charging document" because only an *Orden de Enjuiciamiento* qualifies. *See* Treaty, art. VI(3), 2001 WL 1875758, at *8. But the *Acusación Fiscal* filed in this matter is a charging document for the reasons discussed above. This document of over a thousand pages identifies the crimes that Toledo is accused of and summarizes the supporting evidence. It serves the important purpose in the Peruvian system of signaling the end of discovery and moving the case from the prosecutor's office to a judge of the Preliminary Investigation Court. *See* S. Exc. Rep. No. 107-12, at 4 (Technical Analysis explaining that "an indictment, complaint, information, affidavit, or other lawful means for initiating an arrest for prosecution" render a

10

person "charged" under the treaty). Toledo fails to persuade that more is required.

## 3

Finally, Toledo has not shown a likelihood of success in challenging the existence of probable cause. When reviewing a probable-cause finding in an extradition context, we ask "whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty." *Fernandez*, 268 U.S. at 312. "A 'reasonable ground' exists where the record contains 'competent evidence to support the conclusion that there was probable cause to believe the petitioner guilty.'" *Mainero v. Gregg*, 164 F.3d 1199, 1205 (9th Cir. 1999) (quoting *Zanazanian v. United States*, 729 F.2d 624, 626 (9th Cir. 1984)), *superseded by statute on other grounds*, Pub. L. No. 105-277, § 2242 (1998). "Competent evidence to establish reasonable grounds is not necessarily evidence competent to convict." *Fernandez*, 268 U.S. at 312.

The extradition court found that the testimonies of Jorge Henrique Simoes Barata and Josef Maiman provided probable cause for the money laundering and collusion charges. "Self-incriminating statements of accomplices are sufficient to establish probable cause in an extradition hearing." *Zanazanian*, 729 F.2d at 627. Both Barata and Maiman allegedly participated in the schemes, and the extradition court carefully summarized their testimonies about Toledo's alleged involvement in setting up a scheme where a construction company would pay Toledo millions in

bribes through various intermediary accounts. Toledo, moreover, admitted that $17.5 million in bribe money ended up in his mother-in-law's company, and $500,000 was deposited in a bank account in his name or used to purchase real estate titled to him. As to any inconsistencies that Toledo pointed out, we have rejected the argument that "inconsistencies preclude a finding of probable cause" because "weighing the evidence is not a function we perform when we review the magistrate's probable cause determination." *Sainez v. Venables*, 588 F.3d 713, 718 (9th Cir. 2009).

Toledo also argues that the extradition court erred when it excluded certain pieces of evidence that he sought to introduce during the probable cause hearing. But this evidence "merely controverts the existence of probable cause, or raises a defense" to the crimes alleged. *Santos*, 830 F.3d at 992 (quoting *Mainero*, 164 F.3d at 1207 n.7). Such "contradictory" evidence is properly excluded when evaluating probable cause in extradition proceedings. *See id.* at 992–93.

In sum, Toledo has not shown a likelihood of success on any of his three arguments.

C

The remaining factors—whether the issuance of a stay would substantially injure the other parties and the public interest—"merge when the Government is the opposing party." *Nken*, 556 U.S. at 435. We said before that "the public interest

12

will be served by the United States complying with a valid extradition application" because "proper compliance promotes relations between the two countries, and enhances efforts to establish an international rule of law and order." *Artukovic*, 784 F.2d at 1356.  So too here.

### III

Toledo has shown irreparable harm but no likelihood of success on the merits or that the public interest favors the stay.  As such, we decline to issue a stay.

The motion for a stay is **DENIED**.